The Honorable Jan A. Judy State Representative 202 W. Maple Street Fayetteville, AR 72701-4132
Dear Representative Judy:
I am writing in response to your request for an opinion on a number of questions involving the Arkansas Interstate Compact on the Placement of Children (AR ICPC or "Compact"). Your specific questions are as follows:
 1. Does AR ICPC have jurisdiction to approve a non-resident adoptive family's placement when they have been granted a decree of adoption by an Arkansas court?
 2. Does the AR ICPC apply to international adoptions where an Arkansas agency obtains guardianship in the child's country prior to placing the child for adoption with an Arkansas family?
 3. Does the Voluntary Adoption Registry require the AR ICPC to maintain their records for ninety-nine (99) years?
 4. Under what authority can AR ICPC condition approval of an interstate placement upon an Inter-agency Agreement being entered into between agencies in different states?
 5. Under what authority can AR ICPC make it a condition for approval of a placement that if an agency is involved in one state, there must be an agency involved in the other state? If the placement is arranged by private adoption attorneys, is there authority to the effect that there can be no AR ICPC approval unless an agency is designated as the sending or receiving party?
 6. Does AR ICPC have the jurisdiction to disapprove home studies and placements made and approved by licensed social workers and licensed adoption agencies here in Arkansas and another state?
RESPONSE
It is my opinion that the answer to your first question is "no" if no subsequent hearing is required by the terms of the decree, as long as the decree is entered before the family leaves Arkansas and returns to their home state. The answer to your second and third questions is "no," in my opinion. It is my opinion with regard to your fourth question that the AR ICPC likely lacks authority to require this inter-agency agreement. It is my opinion in response to your fifth question that Articles 1 (b) and III (d) provide authority for requiring post-placement services of an agency. The answer to your sixth question is, in my opinion, generally "yes."
Question 1 — Does AR ICPC have jurisdiction to approve a non-residentadoptive family's placement when they have been granted a decree ofadoption by an Arkansas court?
I assume from the information you have supplied that this question is asked with regard to an interlocutory decree of adoption. See A.C.A. §9-9-214 (Repl. 1998). If a final decree of adoption is entered before the out-of-state family returns home with the child, then it seems clear that there is no interstate placement to which the ICPC must be applied.[1]
You note that when a non-resident family adopts in Arkansas, typically an interlocutory decree is entered by the court within the first two or three weeks after the infant's birth, and that typically this decree does not require a subsequent hearing. Assuming that the family stays in Arkansas until such decree is entered, it is my opinion that the AR ICPC is inapplicable under these circumstances. Thus, in my opinion, the answer to your question is "no" under these circumstances.
It must be initially noted in addressing this question that I have found no legal precedent on this precise issue. No Arkansas court has addressed the question, and my research has disclosed no helpful case law from other jurisdictions. Nor are the regulations issued by the Association of Administrators on the Interstate Compact ("Association of Administrators") specifically addressed to this issue.[2] Questions will undoubtedly remain until the issue is squarely presented either to the Secretariat for an opinion[3] or, ideally, to an Arkansas court. Until then, there will be an opportunity to argue for the interpretation that is consistent with the desired result.
My conclusion that the Compact does not apply under these circumstances is based upon the fact that under Arkansas law, once an interlocutory decree of adoption is entered, it is construed as a final decree if no subsequent hearing is required by the terms of that decree. In reAdoption Orders, 277 Ark. 520, 642 S.W.2d 573 (1982) (per curiam order);see also McCluskey v. Kerlen, 278 Ark. 338, 645 S.W.2d 948 (1983). When the child is transported across state lines following the entry of such a decree, there is no "placement," in my opinion, under the terms of the Compact. Article II of the Compact defines "placement," in relevant part, as "the arrangement for the care of a child in a family, free or boarding home or in a child-caring agency or institution. . . ." Article III (a) provides in relevant part as follows with regard to the conditions for "placement":
 No sending agency[4] shall send, bring, or cause to be sent or brought into any other party state any child for placement . . . preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein. [Emphasis added.]
It thus seems clear that the AR ICPC applies when a child is permitted to live with prospective adoptive parents in another state. Accord
Hartfield, The Role of the Interstate Compact on the Placement ofChildren in Interstate Adoption, 68 Neb. L. Rev. 292, 313-314 (1989). Seealso Wendell and Rosenbaum, Interstate Adoptions: the Interstate Compacton the Placement of Children at § 3-A.09, 1 Matthew Bender Co., ADOPTION LAW AND PRACTICE app. 3-A (2000 ed.) (describing various arrangements that "are clearly for the purpose of placing a child from a sending agency located in one state to prospective adoptive parents who live in another state and who will care for it there during the preadoptive placement period.") In essence, the Compact requires that its procedures be followed in order to obtain the receiving state's permission for placement before the child is sent to the receiving state with the intended adoptive couple. See Secretariat Opinion 60 (January 26, 1993), Compact Administrator's Manual (supra, n. 2) at 3.128 (stating that "[t]he interstate placement of children across state lines . . . preliminary to adoption without observing the requirements of the Interstate Compact on the Placement of Children is illegal.")
If the parent/child relationship is established before the child is taken to the other state, it reasonably follows, in my opinion, that there has been no interstate placement as contemplated by the Compact. Specifically, there is simply no "placement . . . preliminary to a possible adoption." A.C.A. § 9-29-201 (Article III (a)), supra. This scenario appears, instead, to fall within the exception contained in Article VIII (a) of the Compact, which provides as follows:
This compact shall not apply to:
 (a) The sending or bringing of a child into a receiving state by his parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or nonagency guardian in the receiving state[.]
Under Arkansas law, any decree of adoption is a final decree, no matter whether it is interlocutory or final, if no subsequent hearing is required by the terms of that decree. In re Adoption Orders, supra. After entry of such a decree, all relationship of the child to his blood relatives is terminated, and the relationship of parent and child is established between the adoptive parents and the child for all purposes.See A.C.A. § 9-9-215 (Repl. 1998) and Commentaries, Vol. B (Repl. 1995) at 300 (Commissioner's Notes to A.C.A. § 9-9-215). The parent/child relationship thus having been established, it reasonably follows that the Compact will not apply when the out-of-state family returns home with the child after entry of the interlocutory decree of adoption.
The regulations adopted by the Association of Administrators regarding the exception noted above for placements with, inter alia, parents do not, in my opinion, compel a different result. Regulation No. 3 states in relevant part as follows under subparagraph 6 (a):
 Pursuant to Article VIII(a), this Compact does not apply to the sending or bringing or a child into a receiving state by the child's parent . . . and leaving the child with any such relative . . . in the receiving state, provided that such person who brings, sends, or causes a child to be sent or brought to a receiving state is a person whose full legal right to plan for the child: (1) has been established by law at a time prior to initiation of the placement arrangement. . . . [Emphasis added.]
Compact Administrator's Manual, supra n. 2, at 1.25.
This regulation is not dispositive, in my opinion, because it begs the question of what constitutes a "placement arrangement." Clearly, the arrangement process must be interstate in character for the Compact to apply. As stated by the Secretariat, ". . . throughout the Compact, the emphasis is on the interstate character of the arrangements. If the arrangement process is interstate, placement is interstate." Secretariat Opinion 49 (June 30, 1986), Manual, supra at 3.98. Understandably, in this regard, there will be an interstate placement if the arrangement involves the transfer of a child born in one state to prospective adoptive parents from another state who will care for the child in placement in their home state while the adoption petition is pending. See Secretariat Opinion 55 (April 25, 1990), id. at 3.111. But as alluded to by the Secretariat, if the facts indicate that the adoptive parents will remain in the state where the child is born "throughout the entire period from the filing of the petition to the finalization of the adoption[,]" (id.) then I believe it must be concluded that there has been no interstate placement. There has been no interstate "placement arrangement" (see Regulation 3, supra) in that scenario. While one might contend that there is an interstate placement based simply upon the out-of-state residence of the adoptive parents, I believe this ignores the plain language of the Compact, which is premised upon the sending or bringing of a child from one state into another state "as a preliminary to a possible adoption."
Question 2 — Does the AR ICPC apply to international adoptions where anArkansas agency obtains guardianship in the child's country prior toplacing the child for adoption with an Arkansas family?
The answer to this question is "no," assuming that no agency or person in any other state had any participation in the placement arrangement. The AR ICPC is in effect only between Arkansas and other party jurisdictions. Thus, as stated by the Secretariat:
 If a child comes directly from the foreign country to the state in which the home of the prospective adoptive parent(s) is located and there is no connection with another state, ICPC does not apply. . . . When the child is placed in the same state from which the adoption agency operates, ICPC does not apply.
See Secretariat Opinion 67 (September 4, 1996), Compact Administrator's Manual (supra, n. 2) at 3.142. See also Secretariat Opinion 57 (December 7, 1992), id. at 3.117.
Question 3 — Does the Voluntary Adoption Registry require the ARICPC to maintain their records for ninety-nine (99) years?
It is my opinion that the answer to this question is "no." This question has reference to A.C.A. § 9-9-507 (Repl. 1998), which provides:
 All records of any adoption finalized in this state shall be maintained for ninety-nine (99) years by the agency, entity, organization, or person arranging the adoption.
"Agency" is defined under A.C.A. § 9-9-501 (6) as "any public or voluntary organization licensed or approved pursuant to the laws of any jurisdiction within the United States to place children for adoption." It seems clear that this definition does not encompass the AR ICPC.[5] The Compact applies to placements preliminary to possible adoptions.
Question 4 — Under what authority can AR ICPC condition approval of aninterstate placement upon an Inter-agency Agreement being entered intobetween agencies in different states?
You have submitted in this regard a copy of a form document entitled "Inter-Agency Agreement (Interstate Compact)." You note the ambiguous wording of this "Agreement" and you express concern regarding Article V of the Compact, which requires that the sending agency shall retain jurisdiction to determine such matters as custody, care and treatment, and that it will have continuing financial responsibility for support of the child during the period of placement. See A.C.A. § 9-29-201 (text of Article V).
It is my opinion that this document, as written, likely falls outside the authority of the AR ICPC. As you note, it appears to require an agreement between "child placement agencies" for a "joint venture" whereby each agency agrees to assume "all legal obligations for child placement in Arkansas." I am uncertain, in light of this language regarding "child placement in Arkansas," whether the agreement purports to apply when Arkansas is the sending state. In any event, however, I find no authority in the Compact for requiring such an agreement between child placement agencies. There is no requirement under the Compact that child placement agencies must necessarily be involved in each placement. And to the extent the Agreement is construed to shift responsibility away from the sending agency, I agree that it is contrary to Article V.
The apparent purpose of this "Agreement" should, however, be noted when considering your concerns regarding responsibility for the placement. It seems clear that the focus of the Agreement is upon ensuring that the needs of the child will be met if the placement disrupts. While I agree that the sending agency's retention of jurisdiction and financial responsibility is governed by Article V and cannot be shifted to another party, it is my opinion that the AR ICPC, i.e., the Arkansas Compact Administrator, as "general coordinator of activities under [the] compact[,]" (A.C.A. § 9-29-201 (Article VII)), may take steps to ensure that such jurisdiction is viably retained. I believe this follows from the fact that in accordance with Article V, if the circumstances are such that the placement must be terminated, the "sending agency" will be obligated to remove the child from the placement environment. See Article V (a). If, for example, the birth mother is the "sending agency," it is readily apparent that the retention of jurisdiction mandated under Article V may be ineffectual. Consequently, under these circumstances, the AR ICPC could, in my view, require the involvement of either an agency or some other party who engages in placement activities so that there can be some assurance that there will be a suitable disposition of the child if the placement deteriorates. It is my opinion that such an implementing practice would be consistent with the Compact.
These observations apply, as well, with respect to the involvement of a responsible party in the receiving state. This is confirmed by an opinion of the Secretariat as follows:
 The Compact provides in Article V (a) that the `sending agency' shall retain jurisdiction for several enumerated purposes including the return of the child. The entire thrust of this provision is to place responsibility on the sending agency to see that the needs of the child are being met and to assure some other more suitable disposition of the child if the environment into which it has been placed is not appropriate or deteriorates. The sending agency is not in a position to know how the placement is proceeding and to make judgments required in connection with the discharge of its responsibilities unless it receives periodic reports from a responsible agency in the receiving state. Such reports must be made by a source which is providing supervision otherwise they cannot contain reliable information as to conditions of the placement.
Secretariat Opinion 14 (May 16, 1975), Manual at 3.28.
Question 5 — Under what authority can AR ICPC make it a condition forapproval of a placement that if an agency is involved in one state, theremust be an agency involved in the other state? If the placement isarranged by private adoption attorneys, is there authority to the effectthat there can be no AR ICPC approval unless an agency is designated asthe sending or receiving party?
You state that in a recent private attorney assisted adoption, where a private social worker conducted the pre-adoption home study, AR ICPC required an adoptive family to contract with an agency in Arkansas to provide post-placement supervisory services prior to approval for the Arkansas family to return home with their infant born in Texas. You question this requirement, noting that Arkansas law does not require a licensed social worker to be affiliated with a licensed adoption agency. You state that you are concerned that AR ICPC is essentially turning a private-to-private adoption into a private to agency adoption.
With regard to the particular factual scenario that you have outlined, it is my opinion that AR ICPC likely has the authority to require the post-placement supervisory services pursuant to its power and duty to determine that the placement "does not appear to be contrary to the interests of the child." A.C.A. § 9-29-201 (Article III (d)). The receiving state is given this power of decision under the Compact. Article 1 declares, moreover, as one of the Compact's purposes that the responsible authorities of the receiving state "have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child." A.C.A. § 9-29-201 (Article 1 (b)). Requiring the post-placement services of an agency is, in my opinion, within the AR ICPC `s authority in discharging its responsibilities as the "appropriate public authorit[y]" in the receiving state. Article III (d).
Question 6 — Does AR ICPC have the jurisdiction to disapprove homestudies and placements made and approved by licensed social workers andlicensed adoption agencies here in Arkansas and another state?
It is my opinion that the answer to this question is, generally, "yes," assuming that in doing so the AR ICPC is making the required determination regarding the intended placement. As noted above, the Compact vests the "appropriate public authorities in the receiving state" with the power to decide that the placement "does not appear to be contrary to the interests of the child." Article III (d). While the home study assessment is clearly essential and is required for a finding as to suitability by the receiving state, I have found no authority for the proposition that the compact administrator in the receiving state is limited in its evaluation and determination regarding a proposed placement.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Arkansas adopted the ICPC under Act 677 of 1979, which is codified at A.C.A. §§ 9-29-201 to -208 (Repl. 1998). The ten articles of the Compact and the enabling legislation are contained in these Code sections. The Compact is an agreement between the jurisdictions that have entered it, with the primary purpose to facilitate the interstate placement of children in adoption. Morrison and Sievers, Adoption Law inArkansas, 53 Ark. L. Rev. 1 (2000).
[2] The Association of Administrators issues rules and regulations to facilitate or clarify operations under the Compact, pursuant to Article VII of the Compact, which authorizes the compact administrators of all the member states to jointly issue rules and regulations. See American Public Human Services Association, the Interstate Compact on the Placement of Children: Compact Administrator's Manual 4.1 (revised 1/9/01).
[3] The Secretariat for the Association of Administrators furnishes advisory opinions to the compact administrators. Id. at 3.1.
[4] "Sending agency" is defined as "a party state, officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state, a person, corporation, association, charitable agency, or other entity which sends, brings, or causes to be sent or brought any child to another party state[.]" A.C.A. § 9-29-201 (Article II) (Repl. 1998).
[5] The Arkansas Department of Human Services is required, however, to maintain an adoption registry for adoptions it arranges. A.C.A. § 9-9-503
(b).